1

2          **E-Filed 12/30/2009**

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12  LUIS MARISCAL,                      Case Number C 09-3279 JF (RS)

13                    Plaintiff,        ORDER[1] GRANTING IN PART AND
                                        DENYING IN PART MOTION TO
14          v.                          DISMISS AND TO STRIKE, WITH
                                        LEAVE TO AMEND
15  AQUA SUPREME, et al.,
                                        [re:  document no. 17]
16                    Defendants.

17

18

19        Defendant Carmel Financial Corporation, Inc. ("Carmel") moves to dismiss the first

20  through fourth claims and to strike portions of Plaintiff's first amended complaint ("FAC").  The

21  Court has considered the moving and responding papers and the argument presented at the

22  hearing on December 18, 2009.  For the reasons discussed below, the motion will be granted in

23  part and denied in part, with leave to amend.

24                          I. BACKGROUND

25        Plaintiff Luis Mariscal ("Mariscal") filed this putative class action on July 17, 2009,

26  asserting a number of claims arising out of his purchase of a residential water treatment system

27

28  ─────────────────
        [1] This disposition is not designated for publication in the official reports.

Case No. C 09-3279 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND TO STRIKE
(JFLC2)

from Defendant Aqua Supreme ("Aqua").  Mariscal filed the operative FAC on October 7, 2009, alleging the following facts:  On December 10, 2008, a representative of Aqua visited Mariscal's home as part of a door-to-door solicitation scheme to sell home water treatment systems.  FAC ¶ 18.  Mariscal speaks only Spanish; the Aqua representative spoke to him in Spanish.  *Id*. at ¶ 20.  The Aqua representative told Mariscal that drinking unfiltered tap water was unsafe for him, his wife, and his new baby, and that Aqua's water treatment system could make tap water safe by removing fertilizers and other contaminants.  *Id*. at ¶ 21.  When Mariscal stated that he could not afford such a system, the Aqua representative stated that Mariscal could purchase the system with monthly payments of $80.00.  *Id*. at ¶ 22.  The Aqua representative also promised Mariscal "high-quality pots and pans" as an additional incentive to purchase.  *Id*. at ¶ 23.  Mariscal then signed an English language "Work Order Contract" purchasing an Aqua water treatment system for $3,990.00.  *Id*.  He has not received the promised pots and pans.  *Id*.

The "Work Order Contract" stated that the water treatment system would be installed on December 11, 2008.  On that date, the Aqua representative returned to Mariscal's home and stated that Mariscal had been approved for a loan for the water treatment system.  *Id*. at ¶ 25.  Mariscal told the representative that he could not afford the system and did not need it, and that he was canceling the contract.  *Id*. at ¶ 26.  The Aqua representative stated that it was too late to cancel the contract and that Mariscal would pay "a lot of money" whether or not the system was installed.  *Id*.  Mariscal believed these statements and allowed Aqua to install the water treatment system.  *Id*.

The Aqua representative then gave Mariscal a copy of a "Notice of Cancellation" in both English and Spanish, which disclosed a purchaser's right to cancel a home solicitation contract within three days of executing the contract.  *Id*. at ¶ 27.  However, the Notice was dated December 6, 2008, even though Aqua's first contact with Mariscal was on December 10, 2009.  *Id*.

The Aqua representative also gave Mariscal an application for credit, which Mariscal signed.  *Id*. at ¶ 29.  The application was accepted by Carmel and the purchase price of the water system was charged to the account.  *Id*.  The documents stated *inter alia* that Mariscal's monthly

2

1   payments would be $80.00 and that the finance charge was 17.9%. *Id*. at ¶ 28. However,

2   Mariscal's billing statement from Carmel, dated February 25, 2009, charged a 19.9% annual

3   finance rate, not the 17.9% disclosed on the document provided to Mariscal. *Id*. at ¶ 34.

4   Mariscal made several payments to Carmel that included interest calculated at the 19.9% rate. *Id*.

5   When Mariscal disputed his bill by telephone call to Carmel, Carmel stated that the matter was

6   solely between Mariscal and Aqua, and that Mariscal was obligated to pay Carmel regardless of

7   any dispute he had with Aqua. *Id*. at ¶ 35.

8        Carmel mailed Mariscal documents relating to his purchase of the water system. *Id*. at ¶

9   36. Among these documents was the document titled "Aviso de Cancelación" dated January 20,

10  2009 and bearing the signature "Luis Mariscal." *Id*. at ¶ 36. Mariscal maintains he never signed

11  this document and that the signature was placed on the document by someone else. *Id*.

12       Mariscal alleges the following claims against Aqua and Carmel:  (1) violation of

13  California Business and Professions Code § 17577 *et seq.;* (2) violation of California Civil Code

14  § 1632(b); (3) violation of California Civil Code § 1689.7; (4) breach of contract, (5) violation of

15  the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638 *et seq.*, (6) violation of California's Unfair

16  Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq*., (7) violation of TILA, (8)

17  violation of TILA, and (9) violation of UCL. The claims are alleged by Mariscal individually

18  and on behalf of four separate classes of plaintiffs:

19        Class A:  All California residents who, within four years of the filing date of this
20        action, purchased a water treatment system from AQUA SUPREME which was
          financed by CARMEL FINANCIAL and who did not receive the closed-end
21        disclosures required by TILA in violation of UCL as set forth in the Sixth Cause
          of Action.  FAC ¶ 44.

22        Subclass A:  All California residents who, within one year of the filing date of this
          action, purchased a water treatment system from AQUA SUPREME which was
23        financed by CARMEL FINANCIAL and who did not receive the closed-end
          disclosures required by TILA as set forth in the Fifth Cause of Action. FAC ¶ 45.
24
25        Class B:  All California residents who, within four years of the filing date of this
          action, purchased a water treatment system from AQUA SUPREME which was
26        financed by CARMEL FINANCIAL and who did not receive an accurate annual
          interest rate disclosure as required by TILA in violation of UCL as set forth in the
          Ninth Cause of Action.  FAC ¶ 57.
27
28        Subclass B:  All California residents who, within one year of the filing date of this
          action, purchased a water treatment system from AQUA SUPREME which was

3

1   financed by CARMEL FINANCIAL and who did not receive an accurate annual
2   interest rate disclosure as required by TILA as set forth in the Seventh and Eighth
    Causes of Action.

3   FAC ¶ 58.

4                              **II. LEGAL STANDARD**

5   **A.     Motion To Dismiss**

6          Dismissal under Federal Rule of Civil Procedure 12(b)(6) "is appropriate only where the

7   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

8   *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1104 (9th Cir. 2008).  For

9   purposes of a motion to dismiss, the plaintiff's allegations are taken as true, and the court must

10  construe the complaint in the light most favorable to the plaintiff.  *Jenkins v. McKeithen*, 395

11  U.S. 411, 421 (1969).  At the same time, "[w]hile a complaint attacked by a Rule 12(b)(6)

12  motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide

13  the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

14  formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v.*

15  *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  Thus, a court need not accept as

16  true conclusory allegations, legal characterizations, or unwarranted deductions of fact contained

17  in the complaint.  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-755 (9th Cir. 1994).

18  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

19  misconduct, the complaint has alleged – but it has not 'show[n]'– 'that the pleader is entitled to

20  relief.'"  *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P.

21  8(a)(2)).

22         Leave to amend must be granted unless it is clear that the complaint's deficiencies cannot

23  be cured by amendment.  *Lucas v. Department of Corrections*, 66 F.3d 245, 248 (9th Cir. 1995).

24  When amendment would be futile, however, dismissal may be ordered with prejudice.  *Lopez v.*

25  *Smith,* 203 F.3d 1122, 1129 (9th Cir. 2000); *Dumas v. Kipp*, 90 F.3d 386, 393 (9th Cir. 1996).

26  **B.     Motion To Strike**

27         The Court may strike "from any pleading any insufficient defense or any redundant,

28  immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike

                                              4

1  generally will not be granted unless it is clear that the matter to be stricken could not have any

2  possible bearing on the subject matter of the litigation.  *LeDuc v. Kentucky Central Life*

3  *Insurance Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).  Allegations "supplying background or

4  historical material or other matter of an evidentiary nature will not be stricken unless unduly

5  prejudicial to defendant."  *Id*.  Moreover, allegations that contribute to a full understanding of the

6  complaint as a whole need not be stricken.  *Id*.

### III. DISCUSSION

**A.    Paragraphs 10-15**

Carmel moves to strike paragraphs 10-15 of the FAC.  In his opposition, Mariscal

concedes the motion with respect to paragraphs 10-14, but asserts that paragraph 15 properly

asserts liability on the part of Carmel.  Paragraph 15 states in its entirety as follows:

> 15. CARMEL FINANCIAL is subject to all the claims and defenses Plaintiff
> could assert against AQUA SUPREME pursuant to the following provision of the
> credit contract between Plaintiff and CARMEL FINANCIAL:
>
> AVISO
> CUALQUIER TITULAR DEL PRESENTE CONTRATO DE CRÉDITO AL
> CONSUMIDOR QUEDA SUJETO A TODAS LAS RECLAMACIONES Y
> DEFENSAS QUE EL DEUDOR PODRÁ HACER VALER EN CONTRA
> DEL VENDEDOR DE LOS BIENES O SERVICIOS OBTENIDOS CON
> ARREGLO AL PRESENTE O CON EL PRODUCTO DEL MISMO. LA
> RECUPERACIÓN POR EL DEUDOR BAJO EL PRESENTE CONTRATO
> NO EXCEDERÁ LAS CANTIDADES PAGADAS POR EL DEUDOR
> BAJO DICHO CONTRATO.
>
> (Translated into English: "Notice/Any holder of the present contract of credit to
> the consumer is subject to all claims and defenses that the debtor would be able to
> make valid against the seller of the goods or services obtained with agreement of
> the present or with the product of the same.  The recuperation of the debtor under
> the present contract will not exceed the amount paid by the debtor under the
> mentioned contract.") This language is present in the credit contract pursuant to
> 16 C.F.R. § 433.2(a) and is known as the "FTC Holder Rule".

FAC ¶ 15.

The FTC Holder Rule provides that it is an unfair or deceptive act or practice for a seller

to take or receiver a "consumer credit contract" that fails to contain the following provision in at

least ten point bold face type:

> ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO
> ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT
> AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED

5

1    PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY
     HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID
2    BY THE DEBTOR HEREUNDER.

3    16 C.F.R § 433.2(a).

4        A "consumer credit contract," is "[a]ny instrument which evidences or embodies a debt

5    arising from a 'Purchase Money Loan' transaction or a 'financed sale' as defined in paragraphs

6    (d) and (e) of this section." 16 C.F.R § 433.1(I).  A "Purchase Money Loan" is "[a] cash advance

7    which is received by a consumer in return for a 'Finance Charge' within the meaning of the Truth

8    in Lending Act and Regulation Z, which is applied, in whole or substantial part, to a purchase of

9    goods or services from a seller who (1) refers consumers to the creditor or (2) is affiliated with

10   the creditor by common control, contract, or business arrangement." 16 C.F.R § 433.1(d).  A

11   "financed sale" refers to "[e]xtending credit to a consumer in connection with a 'Credit Sale'

12   within the meaning of the Truth in Lending Act and Regulation Z." 16 C.F.R § 433.1(e).

13       Carmel asserts that the alleged contract is not a "consumer credit contract" under the

14   above definitions, and that the FTC Holder Rule thus has no application to the FAC.  Carmel

15   requests that paragraph 15 be stricken on this ground.  In response, Mariscal contends that the

16   transaction at issue is a purchase money loan and thus is a consumer credit contract, triggering

17   the notice requirements of the FTC Holder Rule.  Mariscal also contends that even if it were not

18   required that the contract contain the notice provision described in § 433.2, the contract *in fact*

19   contains such language.  Carmel disputes both contentions, asserting that the transaction is not a

20   purchase money loan and that the language contained in the "AVISO" does not track precisely

21   the language of § 433.2.

22       The Court concludes that it need not determine the application of the FTC Holder Rule at

23   this time.  Mariscal quotes a provision of the contract allegedly entered into with Carmel, and

24   asserts that the provision was included in the contract pursuant to the FTC Holder Rule.

25   Mariscal is entitled to allege the language of the parties' contract and to argue his interpretation

26   of that language, particularly because the language at issue is in Spanish, and it is not clear that

27

28

Case No. C 09-3279 JF (RS)
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND TO STRIKE
(JFLC2)

1    the English translation provided to the Court is accurate.[2]  Accordingly, Carmel's motion to

2    strike paragraph 15 will be denied.

3    **B.    Motion To Dismiss Claims 1-4**

4         Claims 1-4 allege state law claims against Aqua and assert that Carmel is liable for

5    Aqua's conduct pursuant to the language of the "AVISO" discussed above.  Carmel argues that

6    because Mariscal's allegations regarding the "AVISO" must be stricken, claims 1-4 must be

7    dismissed as to Carmel.  As discussed above, the Court declines to strike paragraph 15 of the

8    FAC, setting forth the "AVISO."  Accordingly, the Court likewise declines to dismiss claims 1-4

9    at this time.

10   **C.    Motion To Strike Class Allegations**

11        Carmel moves to strike "Class A" on the ground that there is no possibility that "Class A"

12   will satisfy the requirements of Federal Rule of Civil Procedure 23.  Specifically, Carmel argues

13   that certification of "Class A" will require a determination whether each class member would

14   have purchased the water treatment system had the class member received closed-end TILA

15   disclosures.  Carmel argues that this type of individualized determination renders "Class A"

16   unmanageable.  The Court concludes that this argument is premature, particularly given that

17   Mariscal will be amending the complaint, and it declines to address the adequacy of class

18   allegations at this time.  The motion to strike class allegations will be denied without prejudice.

19   **D.    Motion To Strike Prayer For Injunctive Relief**

20        Carmel moves to strike the prayer for injunctive relief pursuant to California's UCL,

21   asserting that Mariscal has made an insufficient showing of future unfair business practices.

22   Again, the Court concludes that Carmel's motion is premature.  If and when Mariscal prevails

23   upon his UCL claims, the parties may litigate the appropriate remedy and present evidence as to

24   the likelihood of future unfair business practices by Defendants.

25   **E.    Motion To Strike Prayer For Attorneys' Fees**

26        Carmel moves to strike the prayer for attorneys' fees on the UCL claims on the ground

27   _____

28        [2] For example, the Court would have translated "CONTRATO DE CRÉDITO AL
         CONSUMIDOR" AS "Consumer Credit Contract."

that California's UCL does not provide for an award of fees.  In response, Mariscal points out that attorneys' fees may be recovered under California Code of Civil Procedure § 1021.5, known as the "private attorney general" statute.  That statute provides that "a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest" if certain specified requirements are met.  Cal. Civ. P. Code § 1021.5.  Carmel does not dispute the potential applicability of § 1021.5, but argues that because the FAC does not expressly allege the application of § 1021.5, the prayer for attorneys' fees should be stricken.  The motion to strike will be denied, but Mariscal will be directed to amend the complaint to clarify that his prayer for attorneys' fees is based upon § 1021.5.

## IV. ORDER

(1)    the motion is GRANTED IN PART in that Mariscal is directed to amend his pleading to omit paragraphs 10-14 and to clarify that the prayer for attorneys' fees is based upon California Code of Civil Procedure § 1021.5;

(2)    the motion is otherwise DENIED; and

(3)    the amended pleading shall be filed within twenty (20) days after the date of this order.

DATED:  December 30, 2009

_____
JEREMY FOGEL
United States District Judge